### STRONG and others *against* STRONG and others.

Where real estate was given by will to the sons of the testator ; and he ordered it to be divided, by his executors, among them ; such executors made a division and returned it to the court of probate, by

whom it was accepted and approved; on appeal from that decree, it was held, that the question whether the division was according to the will or not, was not a subject of probate cognizance, and therefore, not within the appellate jurisdiction of the superior court.

Where a testator directed, that the *residuum* of his estate, together with advances made to his four sons, should constitute a fund; the use of one-fourth part of which should belong to each of them; which they were to receive, occupy and improve in severalty, during the pleasure of his executors, for the support and maintenance of their respective families and for the education of their respective children; the shares of the sons, subject to such improvement, being given to their respective children, their heirs and assigns forever; it was held, that the sons of the testator, by this devise, took no beneficial interest, but were merely constituted trustees for the benefit of their children; and consequently, a distribution of the fund to the sons, in their own right, could not be legally made.

*Hartford, June, 1831.*

Strong
*v.*
Strong.

THIS was an appeal from a decree of the court of probate, accepting and approving a distribution of the estate of *Elisha Strong*, deceased, made by his executors, under his will.

After making provision for his wife and giving pecuniary legacies to his daughters, the testator proceeded thus: " All the residue and remainder of my estate, not otherwise disposed of, both real and personal, together with all such sums as I have advanced to either of my sons *John W., Elisha B., Samuel* and *Oliver*, shall form an aggregate fund; and the use of one-fourth part thereof shall belong to each of my said sons; and in making a division of the same, the rule shall be, to charge each son with advances made to him, and then to add thereto from said estate in such proportion, that each shall receive in the whole an equal amount; and the share of each son so received they may each occupy and improve in severalty, for the support and maintenance of their respective families and for the education of their respective children. And the share, which each of my said sons shall so receive, and occupy and improve, at the pleasure of my executors, I give and devise, subject to said improvement, to their respective children, their heirs and assigns forever; each family of children to have what their father had improved as aforesaid. And furthermore, I do hereby empower my executors hereinafter named, and the survivor of them, personally, or by judicious persons for that purpose appointed, by said executors, or the survivor of them, to ascertain and decide the amount of advances made to each of my said sons; and also the amount of

the additional sum from said estate, which each son shall receive, to use and occupy as aforesaid, and also the kind or kinds of estate, which shall be taken to make out the additional estate aforesaid to each of my said sons ; also the period when said use and occupation of said estate, in either or all of my sons, ought to cease. And a division so made in the premises, or relative to either matter aforesaid, shall be final on all parties concerned. And lastly, I do hereby appoint my beloved wife *Mary* and *Ward Woodbridge* of *Hartford*, executors of this my will."

The distribution made was of the real estate of the testator, giving to each of the sons sundry parcels, amounting at the appraised value to different sums, viz. to *John W.* 2724 dollars; to *Elisha B.* 1630 dollars ; to the heirs of *Samuel* 2916 dollars ; to *Oliver* 5886 dollars. The distribution, on the face of it, purported to be made by the executors, agreeably to the will.

Various reasons of appeal were assigned, among which were the following. 1. That the court of probate had no jurisdiction to approve or disapprove of any distribution made by said executors, or by the persons by them appointed. 2. That the distribution does not follow, nor is it in accordance with, the will ; as it vests in each of the sons personally a greater and different estate than the will allows. The case was reserved on the sufficiency of these reasons.

*W. W. Ellsworth* and *J. Griswold,* for the appellants, contended, 1. That the court of probate could not legally act on the distribution made by the executors in this case. The 29th section of the act providing for the settlement of estates, relates only to *intestate* estates. *Stat.* 206. The 35th section of the same statute authorizes the court of probate to appoint three freeholders to divide real estate given by will, in those cases only, where either no person is appointed to divide the same, or the persons appointed neglect or refuse to make the division. *Stat.* 208. Here distributors were appointed by the will, who did not neglect or refuse to make division ; and there was no appointment by the court of probate. This case is unlike that of *Pinney* v. *Bissell,* 7 *Conn. Rep.* 21. Courts of probate in this state have no jurisdiction, except what is expressly given by statute.

2. That the distribution was erroneously made, because it

purported to give the sons an estate in fee ; whereas according to the will, they are to take for *a specific purpose*, viz. for the use of their families and the education of their children. Could any person *bona fide* purchase of one of the sons, and thus enable him, by changing the property, to defeat the benevolent intent of the testator? The creditors of the sons have no right to the testator's estate beyond his clear intent to give it to his sons. But the provision that the sons are to hold only *during the pleasure of the executors*, is decisive.

*Hartford,*
June, 1831.

Strong
*v.*
Strong.

*Toucey* and *S. H. Huntington*, contra, contended, 1. That it was within the jurisdiction of the court of probate to accept and approve of the distribution. This results from the general power given by statute to courts of probate to proceed to the final settlement of estates. It also follows as a necessary consequence from the power of making a decree of distribution, that they have the power to see that decree executed. The executors could not complete their administration, nor satisfy the condition of their bond, without performing this duty. When performed, it will, of course, be embraced in the administration account ; and this must be settled by the court of probate.

2. That the estate distributed was that given by the will. The will gave a life estate ; as it was in the power of the executors to extend it during life. The distribution also gave a life estate. By not limiting it to a shorter period, the distribution virtually gave it during the life of the sons. At any rate, the words of the distribution " agreeably to the will," mean the same as if the provisions of the will were incorporated into the distribution ; and the duration of the estate will be such as the will directs.

PETERS, J. In this case, several questions have been discussed, which it is unnecessary to consider, as a decision of one ends the case, viz., was the court of probate authorized to approve the distribution in question? By statute, (*tit.* 32. *sect.* 29.) courts of probate are empowered and directed to make a just division or distribution of all the estate, both real and personal, of any person dying *intestate*, after deducting all the expenses and charges payable out of the same. But by *sect.* 35. their power is limited respecting *testate* estates : where real estate given by will is ordered, by the testator, to be divided among two or more devisees, and no person is appointed to

*Hartford,*
*June, 1831.*
_____

Strong
*v.*
Strong.

divide the same, or the person appointed neglects or refuses to make the division, or dies before he has made it, the court of probate before which the will is proved and approved, shall appoint three freeholders, as the law provides for the dividing of intestate estates, to make division thereof according to the will, who shall make return of their doings to such court. This statute, certainly, gives courts of probate no authority to interfere with the doings of distributors appointed by testators, except in certain specified cases, of which this is not one ; and such courts have no common law jurisdiction. Not one of the incidents giving the court of probate jurisdiction has occurred ; but it is implicitly excluded. Real estate is given by will ; and is ordered, by the testator, to be divided. Two persons are appointed to divide the same. They are both alive, and have not neglected or refused to make the division. Whether they have done right or wrong, or whether the division be according to the will or not, are not questions of probate cognizance, and therefore, not within the appellate jurisdiction of the superior court. If the distributors have done their duty, the distribution is made according to the will : if not, it remains to be done. The decree of the court of probate has not affected the validity of the distribution, if any it had. All the proceedings in that court were *coram non judice ;* and, " it is an acknowledged principle," says an eminent judge, " of every court in the world, that not only the decisions, but every thing done under judicial process of a court not having jurisdiction, are, *ipso facto,* void." *Martin* v. *Hunter's* lessee, 1 *Wheat.* 364. per *Johnson, J.*

The foregoing is my individual opinion, from which I do not understand my brethren to dissent. But to prevent litigation, it is thought expedient to express an opinion upon a question on the merits, which has been fully argued and considered by the Court, *viz.* what estate did *J. W. Strong* take under the will of his father ? [Here the judge read the material clauses of the will.] By this devise, the sons of the testator took no beneficial interest, but were merely constituted trustees for the benefit of their children. This is apparent, first, from the words of the will, and secondly, from the object of the testator.

The sons were made residuary legatees and devisees ; each to receive, occupy and improve, in severalty, the fourth part of a fund composed of the *residuum* and advances made to them,

not for themselves, but for the support and maintenance of their respective families, and the education of their respective children, at the pleasure of the executors. This constituted the sons trustees of a tenancy at the will of third persons, of an estate devised to their children in fee, who thereby became *cestui que trusts.* No particular form of words is necessary to create a trust. Whenever any person having a right to command, gives property and points out the object—the property and the way in which it shall go—this creates a trust, unless he shows clearly, that his desire expressed is to be controuled by the party, and that he shall have an option to defeat it. 2 *Swift's Dig.* 107. *Malim* v. *Keighley,* 2 *Ves.* jun. 333, 335.

The object of the testator was to provide for his grand-children, but not for his sons. Had he intended this estate for them, it was easy to have said so. But it might, and probably would, have been a gift to their creditors, who had no claim on him, and who might, and probably would, have wrested the estate from the objects of his bounty, and defeated his intention to provide for their maintenance and education. To avoid such a catastrophe, he authorized his executors to decide *when* the occupations of his sons ought to cease. This was inconsistent with a beneficial devise to them, but in accordance with a gift in trust. He had made them trustees, and confided in them as such; but if his executors found his confidence misplaced, he authorized them to terminate it.

As the executors have distributed the aggregate fund to the sons, in their own right, though they were merely trustees, the court of probate erred in accepting and approving the distribution.

The decree ought to be reversed.

Hosmer, Ch. J. and Daggett, Js. were of the same opinion.

Williams, J. gave no opinion; and Bissell, J. was absent.

Decree of probate to be disaffirmed.