ANTONIA L. BROACA *v.* PETER F. BROACA

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

464

Argued May 7—decision released July 8, 1980

*Edward A. Israelow,* with whom was *Bonita C. Frasure,* for the appellant (plaintiff).

*Thomas A. Bishop,* with whom, on the brief, was *Thomas B. Wilson,* for the appellee (defendant).

ARTHUR H. HEALEY, J. This appeal arises from a divorce action in which the trial court, *Higgins, J.,* rendered judgment dissolving the marriage of the parties and made certain orders pursuant thereto on May 3, 1979. Among those orders was one requiring the defendant to maintain certain insurance policies on his life with the two minor children of the parties irrevocably named as beneficiaries. Thereafter, the plaintiff filed a motion seeking the court to adjudge the defendant in contempt for his failure to obey the above order. On September 25, 1979, the defendant filed a "Motion to Correct" the judgment in the dissolution action so as to provide that each of the minor children would remain a

beneficiary of the life insurance policies involved only until she reaches the age of majority. After a hearing was held on both of these motions, the trial court granted the defendant's "Motion to Correct" and denied the plaintiff's motion for contempt. From these decisions, the plaintiff has appealed.

This appeal presents two questions: (1) whether the trial court was without subject matter jurisdiction to render that portion of the original judgment that required the defendant to name irrevocably the minor children as beneficiaries of the life insurance policies without regard to the children's ages; and (2) whether the trial court had the power to modify the original judgment as it did.

At the outset of our consideration of the first question we point out that a court order requiring a parent with the duty of child support to name his child as beneficiary of an insurance policy on his life is an appropriate order for the maintenance of that child under General Statutes § 46b-84. Where the order does not extend beyond the child's age of majority, it is a proper method of securing the continued support of the child in the event that the parent dies prior to the child's age of majority. See Clark, Domestic Relations § 15.1 (1968); 2 Nelson, Divorce and Annulment (2d Ed.) § 14.94 (1968 Sup.). The jurisdiction of the Superior Court to make orders of child support that extend beyond the child's age of majority was considered in *Kennedy* v. *Kennedy,* 177 Conn. 47, 411 A.2d 25 (1979). In *Kennedy,* we observed that the jurisdiction of the Superior Court to dissolve marriages and to make and enforce support orders as incidental to divorce decrees, derives from statutory authority. Id., 49–50. The language of General

Statutes § 46b-84 expressly provides that the parental duty of support extends only to a "minor child." The statutory grant of jurisdiction to the Superior Court in matters relating to child support incident to the dissolution of a marriage likewise expressly circumscribes the court's jurisdiction to orders involving only "minor children." Because the age of majority in this state is now eighteen; General Statutes § 1-1d; we concluded in *Kennedy* that any order of child support purporting to extend beyond a child's eighteenth birthday is outside the jurisdiction of the court and of "no force and effect." *Kennedy* v. *Kennedy,* supra, 52–53. It is clear from the statutes involved and from our decision in *Kennedy* that the trial court exceeded its subject matter jurisdiction when it made the original order of support that required the defendant to name irrevocably the parties' children as beneficiaries of the insurance policies insuring his life.

The second question goes to the court's authority to modify its judgment under the facts of this case. The plaintiff claims that because the defendant's "Motion to Correct"[1] the judgment was not filed within four months from the date on which judgment was rendered and because the parties did not submit to the jurisdiction of the court, the court was without authority to open and modify the judgment under General Statutes § 52-212a or Practice Book, 1978, § 326.[2] We agree with the plaintiff

[1] Although the defendant denominated the motion he filed a "Motion to Correct," it is more appropriate to refer to the motion as one to open and modify judgment.

[2] The plaintiff argues also that the trial court could not modify the contested portion of the judgment under the grant of continuing jurisdiction over support orders in General Statutes § 46b-86 because the defendant failed to demonstrate that there was a substantial change in the circumstances of the parties not contemplated at the

that the court's authority to open and modify the judgment did not derive from General Statutes § 52-212a or Practice Book, 1978, § 326,[3] but conclude that, under the circumstances of this case, the court had inherent authority to act as it did. 1 Freeman, Judgments § 226.

In *Bunche* v. *Bunche,* 180 Conn. 285, 287–88, 429 A.2d 874 (1980), we said: "The court's judgment in an action for dissolution of a marriage is final and binding upon the parties, where no appeal is taken therefrom, unless and to the extent that statutes, the common law or rules of court permit the setting aside or modification of that judgment." While it is true that, by their terms, neither General Statutes § 52-212a nor Practice Book, 1978, § 326 authorized the trial court to open and modify its judgment, it is clear that, under the common law, a trial court has inherent authority to open and modify a judgment it rendered without jurisdiction. Such a judgment is void ab initio and is subject to both direct and collateral attack. See *Jensen* v. *Nationwide Mutual Ins. Co.,* 158 Conn. 251, 260, 259 A.2d 598 (1969); *Samson* v. *Bergin,* 138 Conn. 306, 312, 84 A.2d 273 (1951); Restatement, Judgments §§ 7, 11, 117; Restate-

---

time the original decree was rendered. It is clear that the judgment of the court was not modified pursuant to § 46b-86 and the defendant has not argued otherwise. Our disposition of the appeal does not depend upon the grant of continuing jurisdiction contained in § 46b-86.

[3] Practice Book, 1978, § 326 provides: *"Unless otherwise provided by law* and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which it was rendered or passed. The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court." (Emphasis added.) General Statutes § 52-212a is identical to Practice Book, 1978, § 326.

ment (Second), Judgments § 15 and Introductory note to Chapter 5, p. 8 (Tent. Draft No. 6, 1979) ;[4] 3 Freeman, Judgments (5th Ed.) § 1227; 47 Am. Jur. 2d, Judgments §§ 752, 753. "It is an acknowledged principle of . . . every court in the world, that not only the decisions, but every thing done under the judicial process of courts, not having jurisdiction, are, *ipso facto*, void." *Martin* v. *Hunter's Lessee,* 14 U.S. (1 Wheat) 304, 364 (1816) ; *Chrysler Credit Corporation* v. *Fairfield Chrysler-Plymouth, Inc.,* 180 Conn. 223, 229, 429 A.2d 478 (1980) *(Loiselle, J.,* concurring); *Marshall* v. *Clark,* 170 Conn. 199, 205, 365 A.2d 1202 (1976). "If a court has never acquired jurisdiction over a defendant or the subject matter, . . . any judgment ultimately entered is void and subject to vacation or collateral attack." *Bartels* v. *International Commodities Corporation,* 435 F. Sup. 865, 867 (D. Conn. 1977).

In *Robertson* v. *Robertson,* 164 Conn. 140, 318 A.2d 106 (1972), we affirmed the trial court's action to open and modify a judgment rendered without jurisdiction even though the collateral attack on the judgment occurred after more than four years from the rendition of the original judgment. Id., 141, 144–45. In so doing, we did not refer to any statutory or Practice Book authority for the trial

---

[4] The tentative draft of the Restatement (Second), Judgments restricts somewhat the rights of parties to contest the subject matter jurisdiction of the court that rendered the judgment under attack in an attempt to accommodate the dual objectives of finality and validity of judicial action. See comments a and b to § 15 of Tentative Draft No. 6. It is clear, however, that even the rule set out in the tentative draft would permit collateral attack of the judgment here because the court's action was plainly beyond its jurisdiction and the subject matter jurisdiction of the court was never litigated in the original action. See comment c to § 15 of Tentative Draft No. 6.

court's action as there was none at the time.[5]  We concluded only that a portion of the original decree was rendered without jurisdiction and that, therefore, the trial court's action in vacating that portion of the decree was proper.  Ibid.  Similarly, in *Kenworthy* v. *Kenworthy,* 180 Conn. 129, 429 A.2d 837 (1980), which was decided after the effective date of Practice Book, 1978, § 326 and General Statutes § 52-212a, we stated (p. 18): "The power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of judgments; hence judgments obtained by fraud may be attacked at any time."

We conclude that the court's power to open and modify a portion of a judgment that it had rendered without jurisdiction is inherent and may be exercised at any time.  Accordingly, the court did not err in denying the plaintiff's motion for contempt and granting the defendant's "Motion to Correct."

There is no error.

In this opinion COTTER, C. J., BOGDANSKI and PARSKEY, Js., concurred.

PETERS, J. (dissenting.)  I disagree with the conclusion reached by the majority that the defendant in this case is entitled to launch a collateral attack on the judgment ordering him irrevocably to maintain life insurance for the benefit of his children.

We are all agreed about the procedural posture in which this case comes to us.  In the dissolution proceedings that led to the judgment of May 3,

---

[5] Both Practice Book, 1978, § 326 and General Statutes § 52-212a became effective on July 1, 1978.  See Practice Book, 1978, § 7; Public Acts 1977, No. 77-576, §§ 28, 65.

1979, that the defendant now contests, the defendant appeared without reservation, and filed an answer and a cross complaint. At the evidentiary hearing before Judge Higgins, in which the defendant participated, he had the opportunity to present whatever evidence and to raise whatever claims he then deemed appropriate. He could have called to the attention of the court the opinions of this court in *Sillman* v. *Sillman,* 168 Conn. 144, 358 A.2d 150 (1975), and *Kennedy* v. *Kennedy,* 177 Conn. 47, 411 A.2d 25 (1979), both of which had been released by that time. After the judgment was rendered, the defendant took no appeal, nor did he file a timely motion to open or set aside the judgment within the four month period authorized by General Statutes § 52-212a or Practice Book, 1978, § 326. There can therefore be no doubt that the judgment against the defendant was entitled to the full respect ordinarily afforded to a final judgment.

The defendant's motion to correct judgment, belatedly filed on September 25, 1979, may well have been triggered by the plaintiff's motion to hold the defendant in contempt for his failure to maintain the life insurance as previously ordered. The plaintiff initially filed her contempt motion on August 30, 1979, and then renewed it on November 8, 1979. The decision of the trial court to modify its prior judgment on jurisdictional grounds[1] included an order that the contempt motion be marked off the calendar. The plaintiff's appeal is limited to the trial court's modification of its judgment and does not directly challenge the court's disposition of the contempt motion.

---

[1] The motion to correct judgment did not ask, nor did the court purport to find, a substantial change in the circumstances of either party. Cf. General Statutes § 46b-86 (a).

I agree with the conclusion of the majority that the defendant's "Motion to Correct" is not specifically authorized by the statutes or by the Practice Book. Whatever authority the trial court had to correct its judgment must be derived from its common-law right to entertain a collateral attack on a judgment that is not merely voidable but void.

Turning to the merits of the appeal, I concede that the trial court's original order was in error in light of the mandate of General Statutes § 1-1d, as interpreted in *Kennedy* v. *Kennedy,* 177 Conn. 47, 51-52, 411 A.2d 25 (1979), and *Sillman* v. *Sillman,* 168 Conn. 144, 148, 358 A.2d 150 (1975). The court did lack authority to order insurance to be maintained beyond the minority of the defendant's children. I am not persuaded that we should invariably characterize as an absence of subject matter jurisdiction every failure of a trial court to observe every statutory limitation on its authority to act; but it is clear that in this instance I am bound by our holding to the contrary in *Kennedy* v. *Kennedy,* supra, 52-53.

Even if the trial court's error is properly deemed to have been jurisdictional in nature, it is my view that the present collateral attack on the trial court's judgment is not warranted. As we said in *Monroe* v. *Monroe,* 177 Conn. 173, 178, 413 A.2d 819, appeal dismissed, cert. denied, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979), "[t]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal. James & Hazard, Civil Procedure (2d Ed. 1977) § 13.16, esp. 695-97."

It seems to me that this case falls squarely within the rule proposed by Restatement (Second), Judgments § 15. That section provides, in relevant part, "When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if: (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority . . . ."[2] The accompanying comments emphasize that if the original proceedings, in a tribunal of general rather than limited legal capacity, constituted a contested action, relitigation is ordinarily precluded whether or not the question of the tribunal's jurisdiction was expressly raised in the original action. See Restatement (Second), Judgments § 15, comment a, p. 151 and comment d, p. 157. "[T]he public interest in observance of the particular jurisdictional rule is sufficiently strong to permit [relitigation] . . . only if the tribunal's excess of authority was plain or has seriously disturbed the distribution of governmental powers or has infringed a fundamental constitutional protection." Restatement (Second), Judgments § 15, comment d, p. 158.

I fail to understand how the majority can find support in the provisions of this rule for its con-

[2] The remainder of Restatement (Second), Judgments § 15 contains two other provisions allowing relitigation if "(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction." Neither of these two caveats is applicable here.

clusion that collateral attack is appropriate. The rule applies to cases which were contested, but excludes default judgments; the defendant herein did participate in a contested action in a court of general capacity. The rule is not limited to cases in which the jurisdictional question was expressly litigated in the original action. What appears to divide us is the majority's conclusion that the trial court's original action was plainly beyond its jurisdiction.

As I read the language of Restatement (Second), Judgments § 15, there is a significant distinction between the conclusion that the tribunal lacked subject matter jurisdiction and the conclusion that its action was "so plainly beyond the court's jurisdiction . . . [as to amount to] a manifest abuse of authority." If every error of subject matter jurisdiction were to be deemed to be plainly beyond the court's jurisdiction, § 15 would be meaningless, for the exception would swallow up the rule. I would emphasize the truly exceptional nature of the "plainly beyond" cases.

On the record before us, I see no reason to characterize the trial court's error in its original order as plainly beyond its jurisdiction. The trial court had full authority to adjudicate all claims relating to alimony, to marital property and to support. It had the authority to make other orders, although concededly not this one, about the insurance in question. The court clearly could have required the defendant to maintain life insurance for the benefit of the plaintiff as security for an order of alimony. The court obviously could have required the defendant to maintain life insurance as security for orders of support during his children's minority. A court

which has authority to make valid orders about a res which is properly before it does not, it seems to me, act plainly beyond its jurisdiction just because it makes an improper order with respect to that res.

I understand that this court is not bound by rules proposed by the American Law Institute. I recognize that our case law contains many statements in support of the conclusion of the majority that a court has inherent power to open and to modify any judgment rendered without jurisdiction in any respect. I am impressed, however, by the source of that power, by its derivation from the common law and not from statutory fiat. It seems to me entirely consistent with the common-law tradition to accommodate our law to considerations previously thought to be of lesser importance. I believe that a collateral attack on a judgment arising out of a contested action should only be entertained in order to prevent a possible miscarriage of justice. Cf. *Zingus* v. *Redevelopment Agency,* 161 Conn. 276, 282, 287 A.2d 366 (1971). At a time when dockets are crowded and courts are working to full capacity, it does not strike me as a miscarriage of justice to deny a father's belated complaint that he should not be required to maintain life insurance for the benefit of his children.

I would find error and order reinstatement of the original judgment of May 3, 1979.